[No. A090437. First Dist., Div. Five. June 6, 2001.]

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA, Plaintiff and Appellant, v.
CITY OF NAPA et al., Defendants and Respondents;
NAPA VALLEY COMMUNITY HOUSING et al., Interveners and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.C and II.E.

## COUNSEL

Paul Campos; Pacific Legal Foundation, James S. Burling and Mark T. Gallagher for Plaintiff and Appellant.

Harding Larmore Kutcher & Kozal, Christopher M. Harding and Kenneth L. Kutcher for California Housing Council and Apartment Association of Greater Los Angeles as Amici Curiae on behalf of Plaintiff and Appellant.

Hyde, Miller, Owen & Trost, Kirk E. Trost; and Thomas B. Brown, City Attorney, for Defendant and Respondent City of Napa.

Goldfarb & Lipman and Richard A. Judd for Napa Chamber of Commerce, Napa Valley Farm Bureau, Napa Valley Grape Growers' Association, 72 California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriguez, Assistant Attorney General, and Tara L. Mueller, Deputy Attorney General, for the People of the State of California as Amicus Curiae on behalf of Defendant and Respondent.

California Affordable Housing Law Project of the Public Interest Law Project, Michael Rawson; Western Center on Law and Poverty, Dara L.

Schur; Howard, Rice, Nemerovski, Canady Falk & Rabkin and Steven L. Mayer for Interveners and Respondents Napa Valley Community Housing, Non-Profit Housing Association of Northern California, Housing California, Patricia Domingo, Heather Clayton, Donna Simon, Hilda Aviña, Rainy Stegall and Hector Candelario.

Legal Aid of Napa and Richard A. Marcantonio for Interveners and Respondents Patricia Domingo, Heather Clayton, Donna Simon, Hilda Aviña, Rainy Stegall and Hector Candelario.

OPINION

JONES, P. J.—Home Builders Association of Northern California (HBA) appeals from a judgment entered after the trial court sustained a demurrer and dismissed its complaint asserting a facial challenge to an inclusionary zoning ordinance that was enacted by the City of Napa (City). HBA contends primarily that the trial court erroneously applied federal and California takings law. We disagree and will affirm the judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND

City, like many other localities in California, has a shortage of affordable housing. This shortage has negative consequences for all of City's population, but causes particularly severe problems for those on the lower end of the economic spectrum. Manual laborers, some of whom work in the region's wine or leisure industries, are forced to live in crowded, substandard housing. There is a large and growing population of homeless, including many families and teenagers. Workers from low-income families increasingly are forced to live greater distances from their places of employment, which causes increased traffic congestion and pollution.

City formed the Napa Affordable Housing Task Force to address these problems. The task force was a broad based community group that included representatives from nonprofit agencies, environmental groups, religious institutions, local industries, for-profit developers, and the local chamber of commerce. The purpose of the task force was to "study the issues surrounding affordable housing in the City of Napa and . . . make recommendations to the Housing Authority Commission."

The task force studied housing issues for several months. It formed subcommittees, conducted public hearings, and evaluated affordable housing

solutions that had been enacted by other communities. ██ ▬▬ █ Ultimately the task force recommended that City enact an inclusionary housing ordinance[1] modeled after one that had been enacted by Napa County.

City responded by enacting the inclusionary zoning ordinance[2] that is at issue in the present appeal. The ordinance applies to all development in the city, including residential and nonresidential.

The primary mandate imposed by the ordinance on residential developers is a requirement that 10 percent of all newly constructed units must be "affordable" as that term is defined.[3] The ordinance offers developers two alternatives. First, developers of single-family units may, at their option, satisfy the so called inclusionary requirement through an "alternative equivalent proposal" such as a dedication of land, or the construction of affordable units on another site. Developers of multifamily units may also satisfy the 10 percent requirement through an "alternative equivalent proposal" if the city council, in its sole discretion, determines that the proposed alternative results in affordable housing opportunities equal to or greater than those created by the basic inclusionary requirement.

As a second alternative, a residential developer may choose to satisfy the inclusionary requirement by paying an in-lieu fee. Developers of single-family units may choose this option by right, while developers of multi-family units are permitted this option if the city council, again in its sole discretion, approves. All fees generated through this option are deposited into a housing trust fund, and may only be used to increase and improve the supply of affordable housing in City.

Developments that include affordable housing are eligible for a variety of benefits including expedited processing, fee deferrals, loans or grants, and density bonuses that allow more intensive development than otherwise would be allowed. In addition, the ordinance permits a developer to appeal for a reduction, adjustment, or *complete waiver* of obligations under the ordinance "based upon the absence of any reasonable relationship or nexus between the impact of the development and . . . the inclusionary requirement."

---

[1] An "inclusionary zoning" or "inclusionary housing" ordinance is one that requires a residential developer to set aside a specified percentage of new units for low- or moderate-income housing. (See Padilla, *Reflections on Inclusionary Housing and a Renewed Look at its Viability* (1995) 23 Hofstra L.Rev. 539, 540.)

[2] In fact, City enacted two ordinances to address the inclusionary housing problem. We will refer to the ordinances collectively as the inclusionary zoning ordinance or simply, the ordinance.

[3] The definition of "affordable" in the ordinance is complex. In general, the term refers to an amount that could be paid by persons who live in a household that earns significantly less than the area median income.

HBA is a nonprofit corporation and association of builders, contractors, and related trades and professionals involved in the residential construction industry. In September 1999, HBA filed a complaint against City seeking to have the inclusionary zoning ordinance declared facially invalid. As is relevant here, HBA alleged the ordinance violated (1) the takings clauses of the federal and state Constitutions, (2) the Mitigation Fee Act (Gov. Code, § 66000 et seq.), (3) the due process clause of the federal Constitution, and (4) Proposition 218.

City demurred to the complaint, arguing it was entitled to prevail as a matter of law. City supported its demurrer with nearly 700 pages of reports and materials that it had relied upon when adopting the ordinance.

In December 1999, the trial court allowed a group of persons and entities to intervene in the action in support of the ordinance.[4] The interveners joined City's demurrer.

The trial court sustained the demurrer without leave to amend, and entered judgment in favor of City and the interveners. This appeal followed.

## II. DISCUSSION

### A. Introduction and Standard of Review

HBA contends the trial court erred when it sustained the demurrer to its complaint. In arguing City's inclusionary zoning ordinance is facially invalid, HBA again asserts the ordinance violates (1) the takings clauses of the federal and state Constitutions, (2) the Mitigation Fee Act (Gov. Code, § 66000 et seq.), (3) the due process clause of the federal Constitution, and (4) Proposition 218.

The standard of review we apply is familiar. ■ On appeal from a judgment of dismissal after an order sustaining a demurrer, the appellate court reviews the record de novo, to determine whether the complaint states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903].) All facts properly pleaded are deemed to be true. (*Ibid.*)

With these principles in mind, we consider the arguments that have been advanced concerning each claim.

---

[4] The interveners were Napa Valley Community Housing, Non-Profit Housing Association of Northern California, Housing California, Patricia Domingo, Heather Clayton, Donna Simon, Hilda Aviña, Rainy Stegall, and Hector Candelario.

## B. Takings Issues

### 1. Is the Ordinance Facially Invalid?

■ HBA contends that City's inclusionary zoning ordinance is facially invalid because it violates the taking clauses of the federal and state Constitutions.

A claimant who advances a facial challenge faces an "uphill battle." (*Keystone Bituminous Coal Assn. v. DeBenedictis* (1987) 480 U.S. 470, 495 [107 S.Ct. 1232, 1247, 94 L.Ed.2d 472].) ■ " 'A claim that a regulation is *facially* invalid is only tenable if the terms of the regulation will not permit those who administer it to avoid an unconstitutional *application* to the complaining parties.' " (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 547 [45 Cal.Rptr.2d 117], quoting *Tahoe-Sierra Preservation Council v. State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421, 1442 [259 Cal.Rptr. 132].) This is because a facial challenge is predicated on the theory that "the mere enactment of the . . . ordinance worked a taking of plaintiff's property . . . ." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 24 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)

■ Here, City's inclusionary zoning ordinance imposes significant burdens on those who wish to develop their property. However the ordinance also provides significant benefits to those who comply with its terms. Developments that include affordable housing are eligible for expedited processing, fee deferrals, loans or grants, and density bonuses. More critically, the ordinance permits a developer to appeal for a reduction, adjustment, or *complete waiver* of the ordinance's requirements. Since City has the ability to waive the requirements imposed by the ordinance, the ordinance cannot and does not, on its face, result in a taking.

HBA contends the ordinance's waiver clause does not preclude a facial challenge because that clause improperly places the burden on the developer to prove that a waiver would be appropriate when the City has not established a justification for the exactions mandated by the ordinance. According to HBA, allocating the burden in this way is inconsistent with *Dolan v. City of Tigard* (1994) 512 U.S. 374, 391, footnote 8 [114 S.Ct. 2309, 2320, 129 L.Ed.2d 304]. HBA misreads *Dolan*. Quite to the contrary, the Supreme Court stated in *Dolan*, that when evaluating the validity of generally applicable zoning regulations, it is appropriate to place the burden on the party who is challenging the regulation. (*Ibid.*) As we will discuss below, City's inclusionary zoning ordinance is a generally applicable legislative enactment

rather than an individualized assessment imposed as a condition of development. Thus, the burden shifting standard described in *Dolan* does not apply.

### 2. Does the Ordinance Substantially Advance a Legitimate Interest?

The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use without just compensation." Article I, section 19 of the California Constitution contains similar language, stating that governmental entities must pay just compensation when they "take" private property for public use.

In *Agins v. Tiburon* (1980) 447 U.S. 255 [100 S.Ct. 2138, 65 L.Ed.2d 106], the Supreme Court provided a test to determine whether a taking has occurred. The court said, "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests . . . or denies an owner economically viable use of his land . . . ." (*Id.* at p. 260 [100 S.Ct. at p. 2141].)

Here, HBA contends that City's inclusionary zoning ordinance effects a taking under the first of these tests; i.e., that the ordinance is invalid because it fails to substantially advance legitimate state interests. We are unpersuaded.

First, we have no doubt that creating affordable housing for low and moderate income families is a legitimate state interest. Our Supreme Court has said that the "assistance of moderate-income households with their housing needs is recognized in this state as a legitimate governmental purpose." (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 970 [81 Cal.Rptr.2d 93, 968 P.2d 993].) This conclusion is consistent with repeated pronouncements from the state Legislature which has declared that "the development of a sufficient supply of housing to meet the needs of *all Californians* is a matter of statewide concern," (Gov. Code, § 65913.9, italics added) and that local governments have "a responsibility to use the powers vested in them to facilitate the improvement and development of housing to make adequate provision for the housing needs of *all economic segments of the community*." (Gov. Code, § 65580, subd. (d), italics added.) Indeed, Witkin lists 12 separate statutes that are "designed to stimulate the construction of low and moderate income housing by the private sector." (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 54, p. 275; *id.* (2000 supp.) § 54, p. 134.)

Second, it is beyond question that City's inclusionary zoning ordinance will "substantially advance" the important governmental interest of providing affordable housing for low- and moderate-income families. By requiring

developers in City to create a modest amount of affordable housing (or to comply with one of the alternatives) the ordinance will necessarily increase the supply of affordable housing. We conclude City's ordinance "substantially advance[s] legitimate state interests." (*Agins v. Tiburon, supra,* 447 U.S. at p. 260 [100 S.Ct. at p. 2141].)

HBA's principal constitutional claim is that City's ordinance is invalid under *Nollan v. California Coastal Comm'n* (1987) 483 U.S. 825 [107 S.Ct. 3141, 97 L.Ed.2d 677], and *Dolan v. City of Tigard, supra,* 512 U.S. 374.

In *Nollan* the court discussed the "substantially advance" test in the context of a governmental requirement that appellant property owners dedicate a portion of their beachfront property to the public as a condition for obtaining a rebuilding permit. In the course of its discussion, the court said there must be an "essential nexus" between a condition imposed on the use of land, and the impacts caused by the proposed use. (*Nollan v. California Coastal Comm'n, supra,* 483 U.S. at p. 837 [107 S.Ct. at p. 3148].)

*Dolan* also involved dedications of property that were a condition for granting a development permit. There the court said that a "rough proportionality" standard "best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." (*Dolan v. City of Tigard, supra,* 512 U.S. at p. 391 [114 S.Ct. at pp. 2319-2320].)

HBA contends City's ordinance is invalid under *Nollan* and *Dolan* because there is no "essential nexus" or "rough proportionality" between the exaction required by the ordinance, and the impacts caused by development of property.

We reject this argument because *Nollan* and *Dolan* are inapplicable under the facts of this case. "[T]he intermediate standard of judicial scrutiny formulated by the high court in *Nollan* and *Dolan* is intended to address . . . land use 'bargains' between property owners and regulatory bodies—those in which the local government conditions permit approval for a given use on the owner's surrender of benefits which *purportedly* offset the impact of the proposed development. It is in this paradigmatic permit context—where the individual property owner-developer seeks to negotiate approval of a planned development—that the combined *Nollan* and *Dolan* test quintessentially applies." (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 868 [50 Cal.Rptr.2d 242, 911 P.2d 429].) "But a different standard of scrutiny

[applies] to development fees that are generally applicable through legislative action 'because the heightened risk of the "extortionate" use of the police power to exact unconstitutional conditions is not present.' "[5] (*Santa Monica Beach, Ltd. v. Superior Court, supra,* 19 Cal.4th at p. 966, quoting *Ehrlich v. City of Culver City, supra,* 12 Cal.4th at p. 876.) "[I]ndividualized development fees warrant a type of review akin to the conditional conveyances at issue in *Nollan* and *Dolan,* whereas generally applicable development fees warrant the more deferential review that the *Dolan* court recognized is generally accorded to legislative determinations." (*Santa Monica Beach, Ltd. v. Superior Court, supra,* 19 Cal.4th at pp. 966-967.) The justification for these varying levels of scrutiny is founded in the nature of the two types of exactions. "It is one thing for courts to make a government agency adhere to its own justification for requiring the dedication of a particular portion of property as a condition of development; such adherence safeguards against the possibility that the justification is merely a pretext for taking the property without paying compensation. . . . But it is another thing for courts to require that a complex, generally applicable piece of economic legislation that will have many effects on many different persons and entities accomplish precisely the goals stated in a legislative preamble in order to preserve its constitutionality." (*Santa Monica Beach, Ltd. v. Superior Court, supra,* 19 Cal.4th at p. 972.)

Here, we are not called upon to determine the validity of a particular land use bargain between a governmental agency and a person who wants to develop his or her land. Instead we are faced with a facial challenge to economic legislation that is generally applicable to *all* development in City. We conclude the heightened standard of review described in *Nollan* and *Dolan* is inapplicable under these facts.

### 3. *Other Takings Issues*

HBA advances two additional arguments on the takings issue.

First HBA contends that even if the heightened level of scrutiny set forth in *Nollan* and *Dolan* are inapplicable, City's inclusionary zoning ordinance is still invalid under California cases such as *Rohn v. City of Visalia* (1989) 214 Cal.App.3d 1463 [263 Cal.Rptr. 319], *Whaler's Village Club v. California Coastal Com.* (1985) 173 Cal.App.3d 240 [220 Cal.Rptr. 2], and *Liberty*

---

[5]While the court in *Santa Monica Beach,* discussed the scope of *Nollan* and *Dolan* in the context of "development fees," the court has made clear that the same analysis applies whether a governmental entity requires the conveyance of property, or the payment of a fee. (See *Ehrlich v. City of Culver City, supra,* 12 Cal.4th at p. 876.)

*v. California Coastal Com.* (1980) 113 Cal.App.3d 491 [170 Cal.Rptr. 247]. These decisions are inapposite. The issue in each was the validity of an ad hoc condition that was imposed on an individual developer. None of them involved a facial challenge to a generally applicable zoning ordinance that imposed obligations on all development in a given area. We conclude *Rohn, Whaler's Village,* and *Liberty* are not applicable under the facts of this case.

HBA also contends that the inclusionary zoning ordinance is invalid because the lack of housing for low and moderate income families in City is the product of City's own prior restrictive land use policies.

HBA has not cited any authority to support the proposition that a zoning ordinance which tries to solve problems caused by prior legislative decisions is invalid, and case law is directly to the contrary. For example, in *Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104 [98 S.Ct. 2646, 57 L.Ed.2d 631], the Supreme Court ruled that New York could enact a landmark preservation law that was designed to mitigate the effects of prior policies that permitted "large numbers of historic structures, landmarks, and areas" to be destroyed. (*Id.* at p. 108 [98 S.Ct. at p. 2651].) If New York can enact a landmark preservation law to remedy a shortage of historic buildings created by its prior policies, City can enact an inclusionary zoning ordinance even if its prior policies contributed to a scarcity of available land and a shortage of affordable housing.

C. *Mitigation Fee Act**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

D. *Due Process*

HBA contends the inclusionary zoning ordinance is facially invalid under the due process clause of the Federal Constitution because it "requires property owners who develop residential housing to sell or rent 10% of their units at prices or rents that are based entirely upon certain fixed percentages of the income levels of lower and very low- income households." Imposing such a requirement violates the due process clause, HBA argues, because "the inclusionary zoning law provides no mechanism to make a fair return for property owners who are forced to sell or rent units at an amount unrelated to market prices."

We doubt seriously that HBA is entitled to a "fair return" under the due process clause. The "fair return" standard is commonly used to evaluate

*See footnote, *ante*, page 188.

restrictions placed on historically regulated industries such as railroads and public utilities. (See, e.g., *Power Comm'n v. Pipeline Co.* (1942) 315 U.S. 575 [62 S.Ct. 736, 86 L.Ed. 1037].) It has also been used to evaluate rent control ordinances. (See, e.g., *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 679 [209 Cal.Rptr. 682, 693 P.2d 261].) However HBA has not cited, and we are not aware of, any case that holds a housing developer is entitled to "fair return" on his or her investment.

 However we need not base our decision on this ground. First, it is not literally correct to say that City's ordinance "requires property owners who develop residential housing to sell or rent 10% of their units [to low income individuals]." Under the ordinance, any person who does not want to sell or rent a portion of his or her housing units to low income individuals may choose one of the alternatives, such as donating vacant land or paying an in-lieu fee. Thus HBA's argument is based on an incorrect premise.

Second, and more importantly, HBA's facial due process challenge must necessarily fail. As we have said, " 'A claim that a regulation is *facially* invalid is only tenable if the terms of the regulation will not permit those who administer it to avoid an unconstitutional *application* to the complaining parties. . . .' " (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo, supra,* 38 Cal.App.4th at p. 547, citation omitted.) When an ordinance contains provisions that allow for administrative relief, we must presume the implementing authorities will exercise their authority in conformity with the Constitution. (See *Fisher v. City of Berkeley, supra,* 37 Cal.3d at p. 684.)

Here, as we have noted, City's ordinance includes a clause that allows city officials to reduce, modify or waive the requirements contained in the ordinance "based upon the absence of any reasonable relationship or nexus between the impact of the development and . . . the inclusionary requirement." Since City has the authority to completely waive a developer's obligations, a facial challenge under the due process clause must necessarily fail.

HBA contends the waiver clause does not preclude a facial challenge because it does not state expressly that a waiver may be granted based on a lack of a "fair return." However the power of an agency to make adjustments to guarantee a fair return is "not limited to those literally granted by the ordinance . . . ." (*City of Berkeley v. City of Berkeley Rent Stabilization Bd.* (1994) 27 Cal.App.4th 951, 962 [33 Cal.Rptr.2d 317].) When this standard is not expressly stated, it is "present by implication." (*Ibid.*)

E. *Proposition 218**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment is affirmed.

Stevens, J., and Simons, J., concurred.

A petition for a rehearing was denied June 27, 2001, and on July 2, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 12, 2001.

*See footnote, *ante*, page 188.