[No. B201176. Second Dist., Div. Five. Aug. 28, 2008.]

ACTION APARTMENT ASSOCIATION, Plaintiff and Appellant, v. CITY OF SANTA MONICA et al., Defendants and Respondents.

**COUNSEL**

Rosario Perry, James S. Burling, Graham Owen and Damien M. Schiff for Plaintiff and Appellant.

Marsha Jones Moutrie, City Attorney, Joseph Lawrence, Assistant City Attorney, and Alan Seltzer, Chief Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**TURNER, P. J.—**

## I.  INTRODUCTION

This is principally a takings case. In *Dolan v. City of Tigard* (1994) 512 U.S. 374, 386–391 [129 L.Ed.2d 304, 114 S.Ct. 2309] and *Nollan v. California*

*Coastal Comm'n* (1987) 483 U.S. 825, 836–837 [97 L.Ed.2d 677, 107 S.Ct. 3141], the United States Supreme Court adopted what is called a "nexus" and "rough proportionality" test to be applied in an "exaction" case; i.e. when a public entity conditions approval of a proposed development on the dedication of property to public use. (See *Monterey v. Del Monte Dunes at Monterey, Ltd.* (1999) 526 U.S. 687, 702 [143 L.Ed.2d 882, 119 S.Ct. 1624].) The United States and California Supreme Courts have applied the *Nollan/Dolan* nexus and rough proportionality test only when an adjudicative decision is made in the case of an individual developer's request for approval of a project. (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 670 [117 Cal.Rptr.2d 269, 41 P.3d 87]; see *Lingle v. Chevron U. S. A. Inc.* (2005) 544 U.S. 528, 546 [161 L.Ed.2d 876, 125 S.Ct. 2074].)

Plaintiff, Action Apartment Association, challenges the June 13, 2006 enactment of Ordinance No. 2191 which modified existing requirements on multifamily housing construction. Plaintiff argues Ordinance No. 2191, *on its face*, constitutes an unlawful uncompensated taking. Plaintiff asserts the decision of the United States Supreme Court in *Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at page 547 expands the *Nollan/Dolan* nexus and rough proportionality test beyond the scope of an individual adjudicative decision. Plaintiff argues that the *Nollan/Dolan* nexus and rough proportionality test applies in the case of a *facial* challenge to a land use regulation; not only when conducting judicial review of an adjudicative decision made in the case of an individual developer's request for approval of a project. Thus, plaintiff argues it is entitled to a trial on its takings claim utilizing the *Nollan/Dolan* nexus and rough proportionality test. Also, plaintiff argues Ordinance No. 2191 could not be operative without prior review by California's Department of Housing and Community Development pursuant to Government Code section 65585, subdivision (b). We disagree with both of plaintiff's challenges to Ordinance No. 2191 and affirm the judgment.

## II. THE VERIFIED COMPLAINT

On September 11, 2006, plaintiff filed its verified complaint which sought to invalidate Ordinance No. 2191. Named as defendants are the City of Santa Monica (the city) and its city council (the council). On June 13, 2006, the council adopted Ordinance No. 2191 which amended Santa Monica Municipal Code[1] sections 9.56.020, 9.56.030, 9.56.040, 9.56.050, 9.56.060, and 9.56.070. According to plaintiff, an association of owners of developed and undeveloped properties, the ordinance modified the options for meeting affordable housing requirements. The ordinance imposed requirements on

---

[1] All future references to a Municipal Code are to the Santa Monica Municipal Code.

developers constructing multifamily ownership housing projects in a multi-family residential district. Under those circumstances, absent a waiver, the developer was required to construct affordable housing on the site of the development or at another location.

In the first cause of action for an unlawful taking under the federal and state Constitutions, plaintiff alleged: the requirements to build subsidized affordable housing units were not roughly proportional to any impact that might occur from the construction of new or replacement condominium units; there was no nexus between the construction of new or replacement condominium units and the need for subsidized housing; defendant had failed to demonstrate any nexus or rough proportionality between the construction of new or replacement market-rate housing and a significant need for more subsidized housing; and market forces were not responsible for an absence of affordable housing within defendant's boundaries. Thus according to plaintiff, on its face, Ordinance No. 2191 violated the takings clauses of the Fifth Amendment of the United States Constitution and article I, section 19 of the California Constitution because: there was an absence of a nexus between the construction of market-rate residences and a shortage of "affordable units"; defendants had conducted no study which verified the existence of any rough proportionality between the construction of new or replacement market-rate homes and a significant increased need for subsidized housing; builders and buyers alike were not responsible for the purported lack of affordable housing in the city; and to the extent the buyers or builders of housing have the responsibility to house the city's workforce, that obligation should not be disproportionately incurred by the purchasers of new market-rate housing.

The first cause of action alleged: "The lack of a nexus between the construction of market-rate housing within the City of Santa Monica and a shortage of 'affordable units' within the City of Santa Monica means that the affordable unit and related conditions found in City of Santa Monica's Ordinance [No.] 2191 violate the Takings Clause of the Fifth Amendment to the United States Constitution and the Takings Clause of Article I, section 19, of the California Constitution." In addition, plaintiff alleged the ordinance failed to advance any substantial governmental interest and thus further violated the state Constitution takings clause. Hence, plaintiff sought a declaration that the ordinance violated the federal and state constitutional takings clauses.

The second cause of action alleged defendants had failed to determine whether there was a reasonable relationship between the use of the "fee" and the type of development upon which the "fee" would be imposed. Additionally, defendants failed to determine there was a reasonable relationship between the need for the "public facility" and the type of project upon which

the "fee" was imposed. Therefore, plaintiff alleged Ordinance No. 2191 violated Government Code sections 66000 through 66022.

The third cause of action sought a declaration that Ordinance No. 2191 violated Government Code sections 65583 and 65585. According to plaintiff, by reason of Ordinance No. 2191 alone and in combination with the city's zoning codes and related height, setback, and parking requirements, it was now "physically and economically infeasible" for property owners to build new or replacement condominium housing. Also, because of the city's zoning code, there were limits on the number of condominium units that could be placed on a single lot. Because of the density limits and the onsite affordable housing construction requirements created by Ordinance No. 2191, a builder could no longer physically take advantage of the maximum density bonus provided by state law. Thus, because Ordinance No. 2191, standing alone or in conjunction with the city's zoning code, created a constraint on the production of new housing; as such it must be approved by California's Department of Housing and Community Development. Ordinance No. 2191 was never submitted to the state Department of Housing and Community Development for review or approval, thereby violating Government Code sections 65583 and 65585.

The fourth cause of action alleged Ordinance No. 2191 affected property rights and failed to advance a legitimate governmental interest. Further, Ordinance No. 2191 discouraged the construction of new or replacement housing thereby exacerbating the shortage of affordable housing in the city. Because Ordinance No. 2191 failed to advance any governmental interest, it was violative of the federal and state constitutional due process clauses according to plaintiff. The fifth cause of action realleged the factual allegations in the preceding causes of action. According to the complaint, without the issuance of a writ of mandate, plaintiff's members' aforementioned constitutional and statutory rights would be violated. Plaintiff thus sought a writ of mandate enjoining defendants from enforcing Ordinance No. 2191.

The prayer for relief sought a declaration that Ordinance No. 2191 violated: the takings clauses of the federal and state Constitutions; the state and federal constitutional due process clauses; and Government Code sections 66000 through 66022, 65583, and 65585. Also, the prayer for relief sought a determination pursuant to Government Code section 66022, subdivision (b) and Code of Civil Procedure sections 860 through 863 that the affordable housing requirements in Ordinance No. 2191 were invalid. Moreover, the prayer for relief sought the issuance of a peremptory writ of mandate and an attorney's fees award.

## III. DEFENDANTS' DEMURRER AND JUDICIAL NOTICE REQUEST

On April 17, 2007, defendants demurred to the complaint. As to the first cause of action, defendants asserted that: no regulatory takings cause of action was stated because the "substantially advance" test does not apply to such a claim; heightened scrutiny under the nexus and rough proportionality tests cannot apply to a facial challenge to a regulatory enactment of general application such as Ordinance No. 2191; and there was no allegation plaintiff's members had exhausted their administrative remedies or it would be futile to do so. As to the second cause of action, defendants argued: no claim could be stated for a violation of the Fee Mitigation Act (Gov. Code, § 66000 et seq.) as no fee was imposed; even if the obligation to build affordable housing was a fee, no validation action can be pursued pursuant to Government Code section 66002; and any challenge to a fee was barred by the failure to comply with Government Code section 66022. Defendants argued that the demurrer should be sustained to the third cause of action for declaratory relief because: Government Code section 65587, subdivision (b) "requires any action to review housing element conformity" to be brought in a Code of Civil Procedure section 1085 mandate petition; no analysis was required by the Department of Housing and Community Development because Ordinance No. 2191 was not part of an "adoption or update" of the city's housing element; the state Department of Housing and Community Development did not have the authority to approve a municipal ordinance; and plaintiff's cause of action is moot because the city had met its "Regional Housing Needs Assessment . . . fair share target" set forth in the housing element.

As to the fourth cause of action, defendants argued that no facial due process violation was pled because the "substantially advance" test is inapplicable to Ordinance No. 2191 and there were insufficient facts pled showing it was egregiously arbitrary and irrational. Further, defendants asserted, "[T]here is a reasonable relationship between the obligation to construct affordable housing units as imposed by Ordinance [No.] 2191 and the need for such housing caused by the subject development." Moreover, defendants argued plaintiff's members had failed to exhaust their administrative remedies or that it would be futile to do so. Finally, as to the fifth cause of action, defendants argued: the mandate claim was premised on the unlawful takings, Fee Mitigation Act, and due process causes of action which had no merit; they had no ministerial duty to perform any act; and they had not failed to exercise discretion under a proper interpretation of the law.

Defendants filed a lengthy judicial notice request concurrently with their demurrer. Defendants sought judicial notice of 20 separate documents. Those

documents indicate the following. Pursuant to a 1990 initiative, Santa Monica City Charter section 630[2] required that at least 30 percent per year of all newly constructed "multifamily-residential housing" be permanently affordable by low- and moderate-income residents.[3]

According to a December 30, 2003 report to the mayor and the council, charter section 630 resulted from the adoption of Proposition R in the November 6, 1990 election. In March 1992, the council adopted Ordinance No. 1615 which required that in most instances a developer of multifamily housing build affordable units onsite. On July 21, 1998, the council replaced Ordinance No. 1615 with Ordinance No. 1918, the affordable housing production program, which was codified in Municipal Code chapter 9.56.

The December 30, 2003 report to the mayor and the council indicated that in fiscal year 2002/2003, only 0.5 percent of multifamily units constructed in that year complied with charter section 630. That low percentage of affordable housing units did not comply with charter section 630. Further, in fiscal year 2003/2004, it was anticipated that only 21 percent of newly constructed total units would be affordable to low- and moderate-income households. As noted, charter section 630 required that at least 30 percent per year of all newly constructed "multifamily-residential housing" be permanently affordable to low- and moderate-income families. Municipal Code section 9.56.150 required the council to take action to insure compliance with the minimum construction requirements in charter section 630.

On April 11, 2006, the council adopted Ordinance No. 2180. Ordinance No. 2180 was adopted in response to state legislation which: gradually increased "the density bonus" to 35 percent and expanded its availability to senior mobilehome parks, community apartment developments, and stock cooperatives; mandated reductions of set-aside requirements for construction of affordable units; permitted a developer to request a waiver of development standards if necessary to make a project feasible; mandated that a municipality grant concessions to a developer unless certain findings were made; and

---

[2] All future references to a charter are to the Santa Monica City Charter.

[3] Section 630 of the city charter states: "The City Council by ordinance shall at all times require that not less than thirty percent (30%) of all multifamily-residential housing newly constructed in the City on an annual basis is permanently affordable to and occupied by low and moderate income households. For purposes of this Section, 'low income household' means a household with an income not exceeding sixty percent (60%) of the Los Angeles County median income, adjusted by family size, as published from time to time by the United States Department of Housing and Urban Development, and 'moderate income household' means a household with an income not exceeding one hundred percent (100%) of the Los Angeles County median income, adjusted by family size, as published from time to time by the United States Department of Housing and Urban Development. At least fifty percent (50%) of the newly constructed units required to be permanently affordable by this Section shall be affordable to and occupied by low income households."

required that cities adopt ordinances implementing the new changes in statewide law. In accord with state law, Ordinance No. 2180 modified the city's existing density bonus regulations and low- and moderate-income housing construction requirements and otherwise complied with recent statewide housing enactments. Other documents were attached which identified actions by other counties and cities to modify their housing policies. Finally, the judicially noticeable materials indicated that the Department of Housing and Community Development certified that the city's housing element was in full compliance with California housing element law.

Defendants also sought judicial notice of the relevant provisions of the municipal code. Municipal Code chapter 9.56 set forth the requirements for the city's affordable housing production program. In order to secure a development permit, a multifamily project developer has the following options: provide onsite affordable housing units in accord with Municipal Code section 9.56.050; provide offsite affordable housing units pursuant to section 9.56.060; pay an affordable housing fee in accordance with Municipal Code section 9.56.070; or acquire land for affordable housing pursuant to Municipal Code section 9.56.080. (Mun. Code, § 9.56.040.)

Municipal Code chapter 9.56 contains a waiver or adjustment provision. Municipal Code section 9.56.170 permits an applicant for permission to build a multifamily project to request an adjustment or waiver if the requirements of chapter 9.56 effectuated an unconstitutional taking or would otherwise have "an unconstitutional application" to the property. In order to secure an adjustment or waiver, a request must be filed with the director of resource management at the same time as the applicant files the multifamily project application. The applicant has the burden of presenting substantial evidence to support the request and must set forth in detail the factual and legal basis of the claim. According to Municipal Code section 9.56.170, in ruling on an adjustment or waiver application, the resource management director or the city council on appeal assumes: the applicant is subject to the affordable housing requirement in chapter 9.56; the applicant would benefit from the "inclusionary incentives" in chapter 9.56 and elsewhere in the Municipal Code; and the applicant is obligated to provide the "most economical" affordable housing units in terms of construction, design, location, and tenure.

Finally, defendants lodged the administrative record pertinent to the adoption of Ordinance No. 2191. On May 10, 2005, the city council considered issues relating to affordable housing. In a report bearing the same date, city staff related: the city was "committed" to producing affordable housing; rather than construct affordable units, most developers elect to pay the "affordable housing fee"; and there is thus a relationship between the amount of fees collected which are then used to produce affordable low- or moderate-income housing stock. The report further stated: if the affordable housing fee

were increased, there would be additional funds available to leverage greater low- and moderate-income housing construction; one way to increase low- and moderate-income housing construction would be to defer, reduce, or waive the collection of other construction permit fees or assessments; and other options designed to increase low- and moderate-income housing construction included streamlining the development permitting process or even amending Proposition R. Finally, the May 10, 2005 report contained an analysis of the various legal options available to the city. The report contained attachments detailing technical questions raised when evaluating affordable housing issues. The report recommended the council discuss "various affordable housing strategies" consistent with decisions of the United States Supreme Court and the California Supreme Court and Courts of Appeal.

A July 12, 2005 report prepared for a council meeting on that date stated that city staff had previously been directed on November 25, 2003, to evaluate affordable housing production in order to meet the "goals" imposed by Proposition R. The report recommended increasing developer fees and permitting an applicant to secure a waiver or reduction of requirements imposed by the city's affordable housing program. Attached to the July 12, 2005 report was a 103-page July 1, 2005 report detailing the nexus between new market-rate multifamily developments in the city and the need for affordable housing.

On October 11, 2005, Ordinance No. 2174 was presented to the city council for first reading consideration. The proposed ordinance amended Municipal Code sections 9.56.010, 9.56.020, and 9.56.070 in chapter 9.59 by: modifying the calculation, adjustment, and payment timing of the affordable housing fee; adjusting the affordable housing definitions; and establishing a waiver and adjustment process. Ordinance No. 2174 was adopted on November 8, 2005.

## IV. PLAINTIFF'S OPPOSITION

Plaintiff argued that Ordinance No. 2191 constituted a taking subject to the nexus and rough proportionality tests discussed in: *Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at page 547; *Dolan v. City of Tigard, supra,* 512 U.S. at pages 386–391; and *Nollan v. California Coastal Comm'n, supra,* 483 U.S. at pages 836–837. Additionally, plaintiff challenged the imposition of the burden of persuasion on the developer in Municipal Code section 9.56.170; the provision permitting an applicant to secure a waiver or adjustment of the minimum low- and medium-cost housing construction requirements. Plaintiff argued that it should be given the opportunity at a trial to demonstrate defendants could not justify the alleged uncompensated takings resulting from the adoption of Ordinance No. 2191.

As to the third cause of action alleging a violation of Government Code sections 65583 and 65585, plaintiff contended that it had set forth the requirements for a traditional mandamus claim. Plaintiff argued that Ordinance No. 2191 was in essence a de facto amendment to the city's housing element which must be submitted to the state Department of Housing and Community Development. Since these allegations were alleged in the third cause of action, plaintiff argued that the demurrer should be overruled. Finally, plaintiff contended mandate claims were stated by reason of the allegations concerning the alleged uncompensated takings and the state housing element law.

## V.  DEFENDANTS' REPLY

As to the takings arguments, defendants contended: there is no heightened scrutiny of generally applicable economic legislation; Ordinance No. 2191 is generally applicable economic legislation; and the waiver provision in Municipal Code section 9.56.170 prevents plaintiff from making a facial challenge to Ordinance No. 2191.

## VI.  DISCUSSION

### A.  Overview

Plaintiff argues that Ordinance No. 2191 is a facially invalid exaction subject to the *Nollan/Dolan* heightened scrutiny nexus and rough proportionality test. According to plaintiff, sufficient facts were alleged to require a trial on the nexus and proportionality issues. Defendants argue that because plaintiff's challenge is a facial attack and not raised on the context of an adjudication of an individual development request, judicial review of Ordinance No. 2191 utilizing the *Nollan/Dolan* nexus and rough proportionality test is not in order. Further, defendant argues that plaintiff's assertion Ordinance No. 2191 was a de facto amendment to the city's housing element requiring review by the Department of Community Housing and Development is without merit.

### B.  Plaintiff's Facial Constitutional Claims Are Without Merit.

#### 1.  The nature of a facial challenge

■ Our Supreme Court has defined a facial challenge to a statute thusly: "In discussing the standard for evaluating a facial constitutional challenge to a statute, we stated in *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069 [40

Cal.Rptr.2d 402, 892 P.2d 1145]: 'A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, *not its application to the particular circumstances of an individual.* [Citation.] " 'To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.' " [Citations.]' (*Id.* at p. 1084, original italics and ellipsis.)" (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 338 [84 Cal.Rptr.2d 425, 975 P.2d 622], italics omitted.) In the context of a facial takings claim, a party attacking a statute must demonstrate that its mere enactment constitutes a taking and deprives the owner of all viable use of the property at issue. (*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002) 535 U.S. 302, 318 [152 L.Ed.2d 517, 122 S.Ct. 1465]; *Suitum v. Tahoe Regional Planning Agency* (1997) 520 U.S. 725, 736, fn. 10 [137 L.Ed.2d 980, 117 S.Ct. 1659].) The United States Supreme Court has defined a facial takings claim as an "uphill battle" and "difficult" to demonstrate. (*Suitum, supra,* 520 U.S. at p. 736, fn. 10; *Hodel v. Virginia Surface Mining & Recl. Assn.* (1981) 452 U.S. 264, 297 [69 L.Ed.2d 1, 101 S.Ct. 2352].)

### 2. Takings jurisprudence

■ There are two types of compensable takings—categorical and regulatory. (*Brown v. Legal Foundation of Wash.* (2003) 538 U.S. 216, 233 [155 L.Ed.2d 376, 123 S.Ct. 1406]; *Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617 [150 L.Ed.2d 592, 121 S.Ct. 2448].) When an owner's property is taken, in whole or in part, by government for a public purpose, there is a categorical duty of compensation. (*Brown v. Legal Foundation of Wash., supra,* 538 U.S. at p. 233; *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, supra,* 535 U.S. at pp. 321–323.) Further, there are two types of compensable regulatory takings. The first type of compensable regulatory taking occurs when a property owner is deprived of "all economically beneficial or productive use" of the property. (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015 [120 L.Ed.2d 798, 112 S.Ct. 2886]; *Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 964 [81 Cal.Rptr.2d 93, 968 P.2d 993].) Generally speaking, the second type of compensable regulatory taking occurs when a complex set of factors are considered including the character of the government action in terms of whether it is a physical invasion or an accommodation of the benefits and burdens of economic life to promote the common good; in large part, the regulation's economic effect on the landowner; and the extent to which the regulation interferes with distinct investment-backed expectations.

(*Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at pp. 546–547; *Palazzolo v. Rhode Island, supra,* 533 U.S. at pp. 617–618; *San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th at p. 664.) In the context of this second form of regulatory taking, the appraisal of these complicated factors is to prevent, in the framework of this case, plaintiff's members from unfairly bearing public burdens which the body politic as a whole should be compelled to accept. (*Armstrong v. United States* (1960) 364 U.S. 40, 49 [4 L.Ed.2d 1554, 80 S.Ct. 1563]; *San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th at p. 664.)

■ Aside from these general takings principles, there is a special rule initially developed in *Nollan v. California Coastal Comm'n, supra,* 483 U.S. at pages 835–838 which is applicable to land use exactions—demands by governments that landowners dedicate portions of their property as a condition of securing development permits. The United States Supreme Court identified a two-part test to be applied in so-called exaction cases. First, there must exist an "essential nexus" between the " 'legitimate state interest' " the government asserts will be furthered by the condition of a development permit and the exaction itself. (*Dolan v. City of Tigard, supra,* 512 U.S. at p. 386; *Nollan v. California Coastal Comm'n, supra,* 483 U.S. at p. 837.) Second, there must exist a "rough proportionality" between a development restriction imposed on a landowner and the extent of the impact the state-imposed development condition is supposed to mitigate. This part of the test in an exaction case was articulated in *Dolan v. City of Tigard, supra,* 512 U.S. at page 391 thusly: "We think a term such as 'rough proportionality' best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." (See *Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at p. 547; *San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th at p. 666.)

3. The two-pronged *Nollan/Dolan* test does not apply to plaintiff's facial challenge to Ordinance No. 2191

■ Plaintiff argues that it is entitled to assert a facial challenge to Ordinance No. 2191 utilizing the two-pronged *Nollan/Dolan* test. Both the United States and California Supreme Courts have explained the two-part *Nollan/Dolan* test developed for use in land exaction takings litigation applies only in the case of individual adjudicative permit approval decisions; not to generally applicable legislative general zoning decisions. (*Monterey v. Del Monte Dunes at Monterey, Ltd., supra,* 526 U.S. at p. 702; *Santa Monica Beach, Ltd. v. Superior Court, supra,* 19 Cal.4th at p. 967; see *Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at p. 547.) In *San Remo Hotel v. City*

*and County of San Francisco, supra,* 27 Cal.4th at page 670, our Supreme Court explained: "The 'sine qua non' for application of *Nollan/Dolan* scrutiny is thus the 'discretionary deployment of the police power' in 'the imposition of land-use conditions in individual cases.' (*Ehrlich* [*v. City of Culver City* (1996) 12 Cal.4th 854,] 869 [50 Cal.Rptr.2d 242, 911 P.2d 429] (plur. opn. of Arabian, J.).) Only 'individualized development fees warrant a type of review akin to the conditional conveyances at issue in *Nollan* and *Dolan.*' (*Santa Monica Beach, supra,* 19 Cal.4th at pp. 966–967; see also *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1022 [73 Cal.Rptr.2d 841, 953 P.2d 1188] . . . [heightened scrutiny applies to 'development fees imposed on a property owner on an individual and discretionary basis'].)" Thus, prior to *Lingle,* we could not have applied the two-pronged *Nollan/Dolan* test to plaintiff's facial challenge of Ordinance No. 2191.

■ Plaintiff argues that the United States Supreme Court in *Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at page 547, has changed the foregoing jurisprudence and permits use of the *Nollan/Dolan* nexus and rough proportionality test when conducting a facial attack on land use regulations. This contention has no merit. The issue before the Supreme Court in *Lingle* was whether the "substantially advances legitimate state interests" takings test in *Agins v. Tiburon* (1980) 447 U.S. 255, 260 [65 L.Ed.2d 106, 100 S.Ct. 2138] remained viable. Plaintiff relies on the following language in *Lingle* for the proposition that the *Nollan/Dolan* nexus and proportionality test now applies to facial claims: "Although *Nollan* and *Dolan* quoted *Agins'* language, see *Dolan, supra,* at 385; *Nollan, supra,* at 834, the rule those decisions established is entirely distinct from the 'substantially advances' test we address today. Whereas the 'substantially advances' inquiry before us now is unconcerned with the degree or type of burden a regulation places upon property, *Nollan* and *Dolan* both involved dedications of property so onerous that, outside the exactions context, they would be deemed *per se* physical takings. In neither case did the Court question whether the exaction would substantially advance *some* legitimate state interest. See *Dolan, supra,* at 387–388; *Nollan, supra,* at 841. Rather, the issue was whether the exactions substantially advanced the *same* interests that land-use authorities asserted would allow them to deny the permit altogether. As the Court explained in *Dolan,* these cases involve a special application of the 'doctrine of "unconstitutional conditions," ' which provides that 'the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit has little or no relationship to the property.' [Citation.]" (*Lingle v. Chevron U. S. A. Inc., supra,* 544 U.S. at p. 547.)

■ In *Lingle,* the Supreme Court held the *Agins* analysis was no longer a "stand-alone" or "free standing" test for a regulatory taking. (*Lingle v.*

*Chevron U. S. A. Inc., supra*, 544 U.S. at pp. 540, 545.) The Supreme Court did not purport to hold the two-pronged *Nollan/Dolan* test applied to a facial challenge such as that asserted by plaintiff. United States Supreme Court cases are not authority for propositions not considered therein. (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265 [128 L.Ed.2d 229, 114 S.Ct. 1483] ■ ["the 'maxim not to be disregarded [is] that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used' "]; *R. A. V. v. St. Paul* (1992) 505 U.S. 377, 386–387, fn. 5 [120 L.Ed.2d 305, 112 S.Ct. 2538] [it is "contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned"].) Moreover, the Supreme Court in *Lingle* emphasized it was not disturbing any of its prior takings jurisprudence. (*Lingle v. Chevron U. S. A. Inc., supra*, 544 U.S. at p. 545 ["We emphasize that our holding today—that the 'substantially advances' formula is not a valid takings test—does not require us to disturb any of our prior holdings."]; *Kamaole Pointe Development LP v. Hokama* (D. Hawaii 2008) 573 F.Supp.2d 1354, 1369 ["In abrogating the 'substantially advances' formula for takings purposes, the Court emphasized that it was not disturbing any of its prior holdings."].) Thus, *Lingle* does not abrogate the rule that the *Nollan/Dolan* nexus and rough proportionality test applies only in the context of judicial review of individual adjudicative land use decisions.

Given our analysis, we need not discuss defendants' argument that the waiver and adjustment provisions in Municipal Code section 9.56.170 bar any relief in light of the holding in *Home Builders Assn. v. City of Napa* (2001) 90 Cal.App.4th 188, 197, 199 [108 Cal.Rptr.2d 60]. Further, we need not address the question of the effect of the city's apparent failure to enforce the charter section 630 requirement that 30 percent of all multifamily residential housing be permanently affordable and occupied by low- and moderate-income households on plaintiff's ability to make a facial takings challenge utilizing the *Nollan/Dolan* test. (See *Pennell v. San Jose* (1988) 485 U.S. 1, 10 [99 L.Ed.2d 1, 108 S.Ct. 849]; *Poe v. Ullman* (1961) 367 U.S. 497, 507–508 [6 L.Ed.2d 989, 81 S.Ct. 1752].)

### C. There Is No Merit to Plaintiff's Argument Ordinance No. 2191 Required State Approval.

Plaintiff argues that Ordinance No. 2191 was a de facto amendment to the city's housing element and thus required approval by the Department of Housing and Community Development. This contention has no merit. Defendants' judicial notice documents indicate the Department of Housing and Community Development has approved the city's housing element. We conclude the present certification remains effective and no further submission to the Department of Housing and Community Development is warranted.

■ In preparing a housing element document, Government Code section 65585, subdivision (a) requires that a city or county consider the guidelines adopted by the Department of Housing and Community Development in Health and Safety Code section 50459.[4] Government Code section 65585, subdivision (b) requires that, 90 days prior to its adoption, a proposed housing element must be submitted to the Department of Housing and Community Development. In the case of an amendment to the housing element, the proposed modification must be submitted to the Department of Housing and Community Development 60 days prior to adoption. (Gov. Code, § 65585, subd. (b).) Government Code section 65585, subdivision (c) then requires the Department of Housing and Community Development to determine whether the draft or the amendment complies with the requirements imposed by article 10.6 of the Government Code on housing elements. If the Department of Housing and Community Development disapproves the proposed housing element draft or amendment, the city council or board of supervisors may take one of two actions. First, the local legislative body may change the draft or amendment to substantially comply with article 10.6 of the Government Code. (Gov. Code, § 65585, subd. (f)(1).) Second, the city council or board of supervisors may adopt the draft element or amendment without change but only after making a finding that the element or amendment substantially complies with article 10.6 of the Government Code. (Gov. Code, § 65585, subd. (f)(2).) Nothing in Government Code section 65585 requires the Department of Housing and Community Development to conduct a review of an affordable housing ordinance. Thus, defendants' failure to submit Ordinance No. 2191 to the Department of Housing and Community

---

[4] Health and Safety Code section 50459 states: "(a) The department may adopt, and from time to time revise, guidelines for any of the following: [¶] (1) The preparation of housing elements required by Section 65302 and Article 10.6 (commencing with Section 65580) of Chapter 3 of Division 1 of Title 7 of the Government Code. [¶] (2) The preparation of a document that meets both of the following sets of requirements: [¶] (A) Requirements for housing elements pursuant to Section 65302 and Article 10.6 (commencing with Section 65580) of Chapter 3 of Division 1 of Title 7 of the Government Code. [¶] (B) Requirements for the Consolidated Submissions for Community Planning and Development Programs required by Part 91 of Title 24 of the Code of Federal Regulations. [¶] (b) The department shall review housing elements and amendments for substantial compliance with Article 10.6 (commencing with Section 65580) of Chapter 3 of Division 1 of Title 7 of the Government Code and report its findings pursuant to Section 65585 of the Government Code. [¶] (c) On or before April 1, 1995, and annually thereafter, the department shall report to the Legislature on the status of housing elements and the extent to which they comply with the requirements of Article 10.6 (commencing with Section 65580) of Chapter 3 of Division 1 of Title 7 of the Government Code. The department shall also make this report available to any other public agency, group, or person who requests a copy. [¶] (d) The department may, in connection with any loan or grant application submitted to the agency, require submission to the department for review of any housing element and any local housing assistance plan adopted pursuant to the Housing and Community Development Act of 1974 (Public Law 93-383) [42 U.S.C.A. § 5301 et seq.]."

Development for review was not error. Only housing elements or amendments thereto must be submitted to the Department of Housing and Community Development for review. The city's affordable housing ordinance is not a housing element. Municipal Code chapter 9.56 does not amend the city's housing element. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 542–543 [45 Cal.Rptr.2d 117].)

## VII.  DISPOSITION

The dismissal order is affirmed. Defendants, the City of Santa Monica and its city council, shall recover their costs incurred on appeal from plaintiff, Action Apartment Association.

Armstrong, J., and Kriegler, J., concurred.

A petition for a rehearing was denied September 18, 2008, and appellant's petition for review by the Supreme Court was denied December 10, 2008, S167258.