[Civ. No. 13980.  First Dist., Div. Two.  June 15, 1949.]

ROBERT C. MILLER et al., Respondents, v. AL FOWLE et al., Appellants.

[Civ. No. 13981.  First Dist., Div. Two.  June 15, 1949.]

VICTOR NORDSTROM, Appellant, v. ROBERT C. MILLER et al., Respondents.

Rosco Jordan and Charles C. Boynton for Appellants.

Hagar, Crosby & Crosby and Price, MacDonald & Knox for Respondents.

NOURSE, P. J.—These two cases were consolidated for trial. Miller sued Boynton and others to enjoin the construction of a street through his property. Nordstrom sued Miller and others to establish an easement for street purposes through the Miller property. Both judgments were for Miller. The notices of appeal are limited to Fowle, Boynton and Nordstrom and these join in a brief which states the issues to be (1) whether the land involved is in a duly dedicated public street, and (2) whether appellants acquired the right to use the land as a way of necessity.

The facts may be stated briefly. Appellants' predecessor subdivided a tract of land and prepared and filed a map showing lots, streets and public parks, approximately nine-tenths of which lay in the city of Oakland, and one-tenth in the city of Berkeley. The land in dispute is in that part of the tract within the city of Berkeley.

The city council of the city of Oakland accepted the map as presented and purported to accept the proffered dedication of all the streets and public places designated on the map. However, the city council of the city of Berkeley refused to accept dedication of the portion lying within its boundaries and the map was accordingly changed (by the use of red lines) to limit the tract to that portion only which lay within the Oakland city boundaries. As so corrected the map was then recorded as required by the provisions of the Map Act (Stats. 1913, p. 570) (N. B. The original Map Act of 1907 was amended by Stats. 1913, p. 568, and Stats. 1915, p. 1512. The existing law is found in Bus. & Prof. Code, § 11500 et seq. The law applicable to these proceedings is found in the amendments to the Map Act of 1913 and 1915.) The conceded facts upon which the decision must rest are that, though the council of the city of Oakland by resolution accepted the entire map

showing portions of the proposed subdivision within the city of Berkeley, the Berkeley council refused to accept the map—and hence refused to accept dedication of the public ways—and the map was then altered and recorded with the portions lying within the Berkeley limits encircled by a red line to show deletion.

The principal questions of law arising from these facts are two—first, was there a common law dedication of the streets in the city of Berkeley and second, was the council of the city of Oakland empowered to accept those streets lying within the city of Berkeley boundaries?

There was no common law dedication of the streets designated as lying within the Berkeley city limits because the owner did not offer these streets to the city of Oakland. He did offer them to the city of Berkeley and the offer was rejected. Dedication is a matter of contract requiring an offer and an acceptance. Where the intention of the offeror is clear that he did not propose to offer some portion of the land shown upon the map filed there is no dedication of that portion. (*Manhattan Beach* v. *Cortelyou*, 10 Cal.2d 653, 662 [76 P.2d 483].) The want of an intention of the owner to offer to the city of Oakland dedication of the streets within the city of Berkeley is the more clear since he must have known that the law did not permit the city of Oakland to accept an offer of dedication of streets in the city of Berkeley, as will now appear.

This question of power presents no legal difficulties. The two cities are incorporated under the Constitution and their respective charters with power to control and maintain public streets within their respective corporate limits. "A municipal corporation has generally no extraterritorial powers of regulation. It may not exercise its governmental functions beyond its corporate boundaries. (Const., art. XI, sec. 11; *Von Schmidt* v. *Widber*, 105 Cal. 151 [38 P. 682]; *Mulville* v. *City of San Diego*, 183 Cal. 734 [192 P. 702]; 4 McQuillin on Corporations, sec. 1434; 18 Cal.Jur. p. 803.)" (*City of Oakland* v. *Brock*, 8 Cal.2d 639, 641 [67 P.2d 344].) Section 11 of article XI of the Constitution empowers each city to enforce "within its limits" all local regulations. Section 19 of the same article empowers each municipal corporation to establish and operate public works for the benefit of "its inhabitants," but denies the right to furnish "any service" to the inhabitants of any other municipality without the latter's consent. Though this section relates primarily to the

development of public utilities it represents the principle upon which the authorities cited by appellants are based. But there is a marked distinction between this power of a municipality to acquire and operate properties "outside" the city limits (i. e., in unincorporated areas) and the suggested power of one city to acquire and operate public properties "inside" the boundaries of another municipality.

The weakness of appellants' argument may be thus illustrated—if the city of Oakland had power to accept dedication of the streets and public places lying within the limits of the city of Berkeley then it became the duty of the city of Oakland to grade, improve and maintain such streets and public places and to levy taxes or assessments for those purposes. But, under the Oakland charter, it was empowered only to grade and maintain such streets and public places as lay "within the city of Oakland." (Stats. 1911, pt. 2, § 51, subd. 46, p. 1591. N. B. The subdivision was amended in 1925; Stats. 1925, p. 1411, but since these proceedings were had in 1917, the change is not applicable.) Since the acceptance by a municipality of a dedication of a public street carries with it an obligation of maintenance and repairs the denial of the power of maintenance and repair of streets beyond the municipal boundaries carries with it a denial of the right or power of acceptance of an offer of dedication.

We conclude that the city of Oakland was without power to accept dedication of any portion of the proposed streets within the city of Berkeley and that the approval of the map of the subdivision did not work an acceptance beyond the city limits because of this lack of power.

This conclusion is fortified by the authorities without conflict. (See 26 C.J.S. p. 103, n. 32; *Hayes* v. *Kansas City,* 294 Mo. 655 [242 S.W. 411] ; *City of St. Louis* v. *St. Louis University,* 88 Mo. 155, 159; *Gault* v. *Town of Lake Waccamaw,* 200 N.C. 593 [158 S.E. 104, 108].)

Appellants' claim to a way of necessity is equally untenable. Appellant Nordstrom purchased his lot in 1917. Predecessors of Fowle and Boynton purchased in the same year. In 1918, the land involved, including the so-called "Dwight Way" was conveyed to Dane Coolidge. In 1945, the executor of the Coolidge estate conveyed to respondents Miller. The premises were then, and for many years had been, fenced off, planted with trees and shrubbery and had not at any time been opened or used as a public street, nor as a private right of way.

The conceded facts deny the existence of a way of necessity. Assuming such right of way may have accrued when appellants or their predecessors acquired the parcels here involved, such easement was lost through the adverse possession of respondents and their predecessors for a period of more than 25 years. (17 Am.Jur. 1030; 9 Cal.Jur. 962; *Glatts* v. *Henson,* 31 Cal.2d 368, 371 [188 P.2d 745].)

Judgments affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 15, 1949, and appellants' petition for a hearing by the Supreme Court was denied August 11, 1949.