[Civ. No. 38139. Second Dist., Div. Two. Nov. 29, 1971.]

JOHN E. CLAY et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Hackett & Hubbard and Monta W. Shirley for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Assistant City Attorney, Leslie R. Pinchuk and Norman L. Roberts, Deputy City Attorneys, for Defendant and Respondent.

Harry S. Fenton, Joseph A. Montoya and Charles E. Spencer, Jr., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**COMPTON, J.**—Is a homeowner entitled to redress in the courts for the failure of a municipality to take any action by way of either restoring, or vacating with just compensation to the homeowner, a city street which has been washed out by flood, when the circumstances are such that the homeowner's property has been rendered totally inaccessible?

Plaintiffs Mr. and Mrs. Clay (hereinafter plaintiffs) claim that they are entitled to such redress and attempted to assert their claim by filing a complaint for damages against the City of Los Angeles (hereinafter defendant), an action which is essentially grounded on the theory of inverse condemnation.

The question is before us on an appeal by plaintiffs from the sustaining of a general demurrer.

Thus the following facts gleaned from the complaint are deemed to be true.

Plaintiffs for many years prior to January 25, 1969, have been owners and occupants of property abutting a street known as Revello Drive, which street was dedicated to the defendant and has been maintained as such for more than 40 years. Plaintiffs' property known as 17480 Revello Drive is legally described and recorded in the Los Angeles County Recorder's office.

The street and the property are situated in hilly terrain. In January 1969, Revello Drive through no fault of defendant was damaged by a prolonged rainstorm and since January 25, 1969, all street access to plaintiffs' home has been completely cut off. Plaintiffs have been required in going to and from their home to traverse neighboring private property on foot for a distance of 300 feet over a dangerous, unpaved slope. It has, since that date, been impossible for any motor vehicle to be driven nearer than 400 feet from plaintiffs' home.

Demands were made upon the defendant to provide access for the plaintiffs by way of suitable restoration of Revello Drive. Defendant has refused to do so.

On November 20, 1969, and within one year after the flood damage, plaintiffs duly presented to the defendant their written claim for damages in the amount of $75,000 for loss of value of the real property, plus $100 per day from January 25, 1969, for the loss of use and enjoyment thereof. On January 14, 1971, defendant rejected the claim. Nothing more has been done save the filing of this action.

Simply stated the defendant's position is that plaintiffs' loss of access is not the result of any affirmative act by defendant, the flood and resultant washout of the road being an act of God, and that the repair and maintenance of the street is a matter of governmental discretion, a discretion which it is properly exercising in choosing not to repair the street. Thus defendant asserts that it is not accountable in damages because it did not cause the loss of access nor has it breached any duty owing to plaintiffs in failing to restore it.

Plaintiffs recognize defendant's discretion but contend that defendant is abusing that discretion when it refuses to either restore the access or pursue the other option available to it, that of vacating the street under appropriate statutory procedure. The exercise of this latter option would presumptively permit plaintiffs to recover just compensation for this loss of access.

The rights of a landowner whose property abuts on a public street have been discussed in many California cases covering a span of time from the post Civil War era to the present. No case has given a more definitive treatment to the subject than *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]. At pages 349-350 therein it is stated, "The property right of access generally is firmly established. ▪ [¶] It has been long recognized in this state and elsewhere that an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. That right has been described as an easement of ingress and egress to and from his property or, generally, the right of access over the street to and from his property, and compensation must be given for an impairment thereof." (See *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614 [37 P. 750]; *People* ex rel. *Dept. Public Works* v. *Lipari,* 213 Cal.App.2d 485, at p. 489 [28 Cal. Rptr. 808]; *Brown* v. *Board of Supervisors,* 124 Cal. 274 [57 P. 82]; *Lane* v. *San Diego Elec. Ry. Co.,* 208 Cal. 29, at p. 33 [280 P. 109]; and *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719].)

In *Beals* v. *City of Los Angeles,* 23 Cal.2d 381 [144 P.2d 839], it was held that an abutting property owner had standing to seek to enjoin the partial vacation of an alley, which vacation would impair his access, even where other means of ingress and egress were available. The court there said at page 387, "We agree, however, with plaintiff's contention that the complaint states a cause of action. Closing of the alley results in the taking or damaging of private property for a public use. It is settled that the ascer-

tainment and payment of damages is a condition precedent to the right of a city to do public work which will destroy or damage private property. (*Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 P. 750]; *Geurkink* v. *City of Petaluma,* 112 Cal. 306 [44 P. 570]; *Bigelow* v. *Ballerino,* 111 Cal. 559 [44 P. 307]. . . .)"

The obligation to make compensation arises from the constitutional provision that "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . . ." (Cal. Const., art. I, § 14.)

■  "The general rule is that persons specially injured by the vacation of a street or highway are entitled to recover such damages as they may sustain, even in the absence of a statute providing therefor. The discontinuance of a public street upon which a parcel of land abuts, if such street constitutes the only means of access to the parcel in question, would in legal effect be the same as the construction of an impassable barrier around such land, and discontinuance in such a case is generally held to constitute a taking of the property so cut off, inasmuch as total deprivation of access is equivalent to a taking, especially when the easement of access to the street is recognized by the substantive law of the state." (26 Am.Jur.2d Eminent Domain, § 241.) (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659.)

Defendant apparently would agree with the foregoing principles and would agree that plaintiffs have such an easement and consequent right of access as described in the cited cases.

The defendant, however, sharply challenges the relevance of the cited law to the particular fact situation, arguing, as stated, that no liability can be imposed on it since the defendant was not the cause in fact of the damages to Revello Drive nor to plaintiffs' property right of access. Defendant conceives the damage as coincident with the storm and bound in time to its passage and consequent effects.

Plaintiffs on the other hand find damage in the refusal of the defendant to repair and do not seek to place the onus on defendant for the physical fact of the flood. They claim damage in the deprivation, a continuing and lineal view, rather than *eo instante* damage.

Defendant maintains that plaintiffs' private easement of access, though not presently usable, continues to exist. The practical result of accepting such a position would be to reduce the easement to *an empty right somewhat akin to a door opening on a brick wall.* To hold that under these circumstances the easement remains unimpaired would mean that in no

case could compensation for any taking of an easement be awarded. In any case where supervening physical impediment to the exercise of the easement existed, the taking would be excused by mere assertion that only the power to exercise had been taken but the right remained undisturbed. The contention is obviously without practical merit or support in law or equity.

It is self-evident that plaintiffs have suffered an impairment of their recognized property right of access.

Thus the question to be answered is whether under these circumstances the non-action of the defendant is in effect action on its part and amounts to a taking of private property for which it must pay compensation.

It is crystal clear that a duty to act must exist before any liability can be based on a failure to act. Since we are dealing with governmental liability, this duty must have either a contractual, statutory or constitutional basis. (See *Coffey* v. *City of Berkeley,* 170 Cal. 258 [149 P. 559]; *South* v. *County of San Benito,* 40 Cal.App. 13 [180 P. 354]; *Winbigler* v. *City of Los Angeles,* 45 Cal. 36; *Chope* v. *City of Eureka,* 78 Cal. 588 [21 P. 364]; *Sutfin* v. *State of California,* 261 Cal.App.2d 50 [67 Cal.Rptr. 665].) We look first at the nature of the dedication process by which a city acquires property for its streets, and the reasonable expectations of abutting property owners.

Dedication has been defined as "the intentional appropriation or donation of land, or of an easement or interest therein, by its owner for some proper public use." (23 Am.Jur.2d, § 1, p. 4.) A dedication is said to have the characteristics of a contract, in that it requires both an offer and acceptance and is not binding until there has been an acceptance. (*County of Inyo* v. *Given,* 183 Cal. 415 [191 P. 688].) As in a contract, an expectation of performance is created—an expectation which in its barest essentials means that the land dedicated will be put to the use contemplated.

An action in equity may be brought against a municipality by anyone having a special interest in the dedication to enforce the uses for which the dedication was made. (See 23 Am.Jur.2d, § 69, p. 59.)

The act of dedication of land for a public highway or street appears to demand a use of the land which is not only consistent with public need for travel but also is consistent with the justification for taking of the land or its acceptance by way of surrender from adjoining estates. Such a dedication envisions a continued use.

It has been held that since a city is not required to accept the dedication of a street, if it does so, it takes the advantages yoked with the burdens. (*Partridge* v. *City of Richmond,* 36 Cal.App. 389 [172 P. 166].)

Where, as here, a city accepts a dedication and proceeds to *open, establish* and *maintain* a street,[1] persons purchasing and constructing homes on lots abutting that street reasonably expect that the street will continue to exist in a usable condition.

Reality anticipates damage, fair wear and tear and perhaps even calamitous occurrences attending this continued use. Certainly the necessity of frequent and regular repair is an inevitable result of use. It therefore appears reasonable that where a dedication has been accepted and acted upon by way of creating a street, the municipality should be charged with the duty of keeping the dedicated property open, in repair and free from such obstructions, hindering encroachments or nuisances which would destroy in whole or in part the use as a public thoroughfare and should be held liable for injuries caused by neglect to do so. (*Miller* v. *Fowle,* 92 Cal. App.2d 409 [206 P.2d 1106]; *Fitzgerald* v. *Smith,* 94 Cal.App. 480 [271 P. 507]; 26 C.J.S., §§ 44, 55.)

When the defendant accepted the dedication and opened Revello Drive it must have reasonably foreseen the need for routine maintenance, and substantial repairs. Considering the terrain in question and the potential of flooding from heavy storm runoff, it would not be unreasonable to expect the defendant, at the time it accepted the dedication and established the road, to have foreseen even the present damage. If this damage was foreseeable it clearly is within the scope of the defendant's duty to repair.

Current statutory law, contained in the Streets and Highways Code, provides only obliquely and by negative reference for a duty on the part of a municipality to maintain and repair its streets.

Streets and Highways Code section 4090 provides: "Whenever the public interest or convenience may require, the legislative body of any city shall have full power and authority:

"(a) To order the laying out, opening, extending, widening, straightening, establishment or change of grade, in whole or in part, of any one or more of any public streets or parking places within the city."

Section 1806 of the Streets and Highways Code provides: "No public or private street or road shall become a city street or road until and unless

---

[1] Our discussion is limited to that precise factual situation and we do not purport to deal with so-called "paper" streets where dedicated streets are described on a tract map but have not been opened or developed.

the governing body, by resolution, has caused said street or road to be accepted into the city street system; *nor shall any city be held liable for failure to maintain any road unless and until it has been accepted into the city street system by resolution of the governing body.*" (Italics added.)

Finally section 1921 of the Streets and Highways Code states: "The governing body of any city shall have jurisdiction to prescribe the requirements for maintenance . . . of all streets within the limits of the city."

The Charter of the City of Los Angeles reflects a similar grant of power and absence of mandatory language.

"Article I, Incorporation and Powers, section 2 provides in pertinent part:

"(11) Among the rights and powers which may be exercised by the City of Los Angeles, are the following, this enumeration being a partial enumeration and in no sense a restriction or limitation upon the rights and powers of the city: . . .

"(m) To provide for the acquisition, construction, improvement or alteration, maintenance, use and control of streets, tunnels, subways, . . . storm drains, and other public or local improvements on, above or below the surface of the land or water."

Article III, section 37 of the Charter sets out relevant powers of the council.

"The Council shall have power to provide for any or all of the following improvements, to wit: . . . vacating . . . construction or reconstruction . . . repairing. . . ."

While the language of these enactments grants the right to create, establish and maintain in their clearest and most direct expression of intent, they also contain unmistakably clear, albeit indirect, reference to a correlative and logically sequential *duty* to maintain, which duty arises upon exercise of the right.

■ Where a statute confers powers or duties in general terms, all powers and duties incidental and necessary to make such legislation effective are included by implication. (Sutherland, Statutory Construction, § 5402.) (See also *Miller* v. *Fowle, supra,* at p. 412.)

■ The phrase "to maintain" as applied to tangible property has generally the meaning of "upkeep and repair." (*Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747, at p. 758 [43 P.2d 547]; *American Trust Co.* v. *Truck*

*Ins. Exch.,* 147 Cal.App.2d 395, 397 [305 P.2d 73]; *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295, 304 [288 P.2d 989]; 47 Ops.Cal.Atty.Gen. 191.)

Resorting to analogy to determine the intendment of the Legislature in its indirect reference to a duty to maintain, we note that the Change of Grade Act of 1909 and the Streets and Highways Code section 8000 provide a procedure, including notice and hearing, for the city's exercise of its power to change the grade of its streets. Yet this statute does not call specifically and in so many words for compensation to aggrieved property owners.

*Butters* v. *City of Oakland,* 53 Cal.App. 294 [200 P. 354], affirmed 263 U.S. 162 [68 L.Ed. 228, 44 S.Ct. 62], in construing this statute noted this failure to mention compensation but stated that changing grade without compensation would be unjust, that a court ought to be able to examine into the matter.

In an unbroken line of cases, California courts have held that a grade level change which adversely affects the access to adjoining property requires compensation for such impairment. (See *Wilcox* v. *Engebretsen, supra; Eachus* v. *Los Angeles etc. Ry. Co., supra,* and cases cited therein.)

By implication then, a city having established a street at a certain grade level, as it has the right to do, is under a duty to maintain it at that level or compensate persons specifically affected by the change.

These cases provide a telling comparison between plaintiffs here and those who are readily compensated for a mere alteration in street level. In a grade level change, access may sometimes be made more difficult or inconvenient. It is a rare case when adjoining property is rendered totally inaccessible.

True, the defendant here has not by affirmative action changed the grade. However, its refusal to repair the street or to provide other access or relief which maintains the present condition of the road is tantamount to changing the grade and is more devastating in its effect.

Recognition of the right to compensation for a change of grade provides yet another answer to defendant's claim that plaintiffs are not entitled to compensation because their easement subsists. Where there has been a change in the grade level of a street which impairs access, it could be argued that the easement, though unusable, is unimpaired. Nonetheless, compensation is required.

We do not hold that the defendant has a never-ending duty to maintain a street that has once been established.

A municipality may relieve itself of the burden of maintaining and repairing a dedicated street by using appropriate machinery in the Street Vacation Act of 1941, Streets and Highways Code section 8300 et seq.

Such procedure would carry with it the obligation to compensate abutting landowners whose property rights were impaired.

This conclusion is buttressed by the fact that in 1969 the Legislature in granting the cities a right to summarily vacate and abandon any portion of a street specifically excepted cases in which such abandonment would "cut off all access to the property of any person which . . . adjoined the street. . . ." (Sts. & Hy. Code, § 1930.)

Abandonment of a street must be accomplished in the manner provided by statute since streets are in law the property of all of the people of the state. (See *County of San Diego* v. *Cal. Water etc. Co.,* 30 Cal.2d 817, 823 [186 P.2d 124, 175 A.L.R. 747]; *People* v. *County of Marin,* 103 Cal. 223 [37 P. 203].)

The procedure for vacation envisions a city's plenary right to abandon a dedicated street. However, all statutes are written in the shadow of the Constitution and the exercise of this power is tempered by the necessity to pay compensation for any taking of or damage to a private right. (Cal. Const., art. I, § 14.)

From a synthesis of defendant's duty to maintain the street and its right to abandon the street under prescribed conditions there evolves a clearly defined duty which defendant owed to plaintiffs.

Within a reasonable time after receiving notice of the destruction of the street, defendant was obliged to either restore plaintiffs' access or to proceed to vacate the street and pay compensation therefor.

In electing to do neither, defendant breached its duty to plaintiffs, which breach gave rise to a cause of action for damages.

Our decision leaves defendant with full responsibility for manifold decisions regarding maintenance, relocation or vacation of public ways. (*People* v. *City of Oakland,* 96 Cal.App 488 [274 P. 438]; *Polack* v. *S. F. Orphan Asylum,* 48 Cal. 490; *City of Los Angeles* v. *Fiske,* 117 Cal.App.2d 167 [225 P.2d 445]; *Bowles* v. *Antonetti,* 241 Cal.App.2d 283 [50 Cal.Rptr. 370]; 20 Ops.Cal.Atty.Gen. 281.) The determination as to whether the street in question is to be vacated pursuant to statute or to be rebuilt so as to restore plaintiffs' easement is left to the city council and their legislative prerogative. (See *Nickerson* v. *San Bernardino,* 179 Cal. 518, at pp. 522-

523 [177 P. 465], cited in *Wine* v. *Boyar,* 220 Cal.App.2d. 375 [33 Cal. Rptr. 787]; *Beals* v. *City of Los Angeles, supra; O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308, 324 [245 P. 164]; *Ransom* v. *L. A. City High School Dist.,* 129 Cal.App.2d 500, 505 [277 P.2d 455].)

Even at this late date defendant still has available two alternative courses of conduct. While the court may not dictate which alternative defendant shall exercise, defendant must either restore the access or compensate plaintiffs.

The order of dismissal is reversed and the matter is remanded to the trial court for proceedings in accordance with the principles we have stated.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 10, 1972. Burke, J., was of the opinion that the petition should be granted.